621 So.2d 1131 (1993)
Dimitrios GIANNOULEAS
v.
PHOENIX MARITIME AGENCIES, INC., Cosmian Compania Naviera S.A. and United Kingdom Mutual Steam Ship Assurance Association (Bermuda), Ltd.
Nos. 92 CW 0221, 92 CW 0285.
Court of Appeal of Louisiana, First Circuit.
February 3, 1993.
*1132 Paul H. Dué, Baton Rouge, for Dimitrios Giannouleas.
Ashton R. O'Dwyer, Jr., New Orleans, for Phoenix Maritime Agencies, Inc., et al.
Before CARTER, LeBLANC and CHIASSON[*], JJ.
REMY CHIASSON, Judge Pro Tem.
This action is a suit in admiralty[1] to recover compensatory and punitive damages for injuries sustained by the plaintiff seaman, Dimitrios Giannouleas, while on shore leave. Made defendants were: (1) Cosmian Compania Naviera S.A. "Cosmian"[2], Giannouleas' employer; (2) United Kingdom Mutual Steam Ship Assurance Association (Bermuda) Ltd. "United Kingdom", Cosmian's marine protection and indemnity (P & I) insurer[3]; and (3) Phoenix Maritime Agencies, Inc. "Phoenix"[4], Cosmian's agent. United Kingdom filed a peremptory exception raising the objection of no cause of action asserting that La.R.S. 22:655 (the Louisiana Direct Action Statute) cannot be used to invoke a direct action against an insurer which issued a policy of "ocean marine insurance". The trial court denied the peremptory exception. From that judgment, United Kingdom applied for supervisory writs.[5] This court granted certiorari.

*1133 FACTS
On November 15, 1981, the M/V STAMY, under Greek flag, was anchored in the Mississippi River in St. Charles Parish near St. Rose, Louisiana. Giannouleas was employed at the time as third engineer aboard the vessel by Cosmian. Giannouleas went ashore that afternoon with two other crew members and spent the evening in New Orleans where he became extremely intoxicated. He and his companions returned to St. Charles Parish via taxi, where Giannouleas refused to accompany them aboard the STAMY, announcing his intention to return to New Orleans. The other two crew members returned to the ship, and Giannouleas was found by sheriff's deputies several hours later injured and unconscious by a roadside near the ship's landing. Plaintiff does not remember any details of the accident after leaving New Orleans. He alleges that he was either hit by a car or beaten by a group of people.

LAW
United Kingdom alleges that the trial court erred in denying its peremptory exception raising the objection of no cause of action which asserted that the marine P & I policy it issued to Cosmian is an "ocean marine" insurance policy that is excepted from the provisions of the Direct Action Statute.
This objection is more properly an objection of no right of action rather than one of no cause of action and will be treated as such.[6]Hebert v. Aetna Casualty and Surety Company, 400 So.2d 695 (La. App. 1st Cir.1981); Vincent v. Penrod Drilling Company, 372 So.2d 807 (La.App. 3rd Cir.), writ denied, 375 So.2d 646 (La. 1979).
At the time of the accident, the Louisiana Direct Action Statute provided as follows:

No policy or contract of liability insurance shall be issued or delivered in this state, unless it contains provisions to the effect that the insolvency or bankruptcy of the insured shall not release the insurer from the payment of damages for injuries sustained or loss occasioned during the existence of the policy, and any judgment which may be rendered against the insured for which the insurer is liable which shall have become executory, shall be deemed prima facie evidence of the insolvency of the insured, and an action may thereafter be maintained within the terms and limits of the policy by the injured person, or his or her survivors mentioned in Revised Civil Code Article 2315, or heirs against the insurer. The injured person or his or her survivors or heirs hereinabove referred to, at their option, shall have a right of direct action against the insurer within the terms and limits of the policy; and such action may be brought against the insurer alone, or against both the insured and insurer jointly and in solido, in the parish in which the accident or injury occurred or in the parish in which an action could be brought against either the insured or the insurer under the general rules of venue prescribed by Art. 42, Code of Civil Procedure. This right of direct action shall exist whether the policy of insurance sued upon was written or delivered in the State of Louisiana or not and whether or not such policy contains a provision forbidding such direct action, provided the accident or injury occurred within the State of Louisiana. Nothing contained in this Section shall be construed to affect the provisions of the policy or contract if the same are not in violation of the laws of this State. It is the intent of this Section that any action brought hereunder shall be subject to all of the lawful conditions of the policy or contract and the defenses which could be urged by the insurer to a direct action brought by the insured, provided the terms and conditions of such policy or contract are not in violation of the laws of this State.

*1134 It is also the intent of this Section that all liability policies within their terms and limits are executed for the benefit of all injured persons, his or her survivors or heirs, to whom the insured is liable; and that it is the purpose of all liability policies to give protection and coverage to all insureds, whether they are name insured or additional insureds under the omnibus clause, for any legal liability said insured may have as or for a tortfeasor within the terms and limits of said policy. (Emphasis added)
At the time of the accident in question, the Louisiana Direct Action Statute was contained in Part XIV of the Louisiana Insurance Code.[7] At the time, Section 611 of Part XIV (La.R.S. 22:611) provided as follows:
The applicable provision of this Part shall apply to insurances other than ocean marine and foreign trade insurances. This Part shall not apply to life or health and accident insurance policies not issued for delivery in this state nor delivered in this state. (Emphasis added)
Giannouleas alleges that although the Direct Action Statute is contained in Part XIV of the Insurance Code, it is not subject to the "ocean marine" exclusion of La.R.S. 22:611.
The Louisiana Supreme Court, in Backhus v. Transit Casualty Company, 549 So.2d 283 (La.1989), addressed a similar issue. That case dealt with the "ocean marine" exclusion of the Louisiana Insurance Guaranty Association Law "LIGA".[8] LIGA provides payment for "covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer...." La.R.S. 22:1376 (now La.R.S. 22:5062). Although the statute offers this protection for "direct insurance", it nevertheless expressly excludes from protection certain types of direct insurance, including "ocean marine insurance". La.R.S. 22:1377 (now La.R.S. 22:5063). In holding that marine P & I insurance is excluded from the protection of LIGA, the Supreme Court stated, "the term `ocean marine insurance' includes protection and indemnity insurance and that protection and indemnity insurance, absent some intent on the part of the legislature to protect individuals entitled to recover under protection and indemnity policies, falls within the `ocean marine insurance' exception to Louisiana Insurance Guaranty Association protection." (Emphasis added) Backhus v. Transit Casualty Company, 549 So.2d at 289.
Unlike LIGA, there is considerable evidence that the legislature intended to allow direct actions against marine P & I insurers. The Direct Action Statute applies to any insurance against the liability of the insured for the personal injury or corporeal property damage to a tort victim, regardless of whether the policy is framed in liability or indemnity terms. It proclaims that "all liability policies within their terms and limits are executed for the benefit of all injured persons". Quinlan v. Liberty Bank and Trust Company, 575 So.2d 336, 353 (La.1991) (on rehearing).
The Direct Action Statute existed long before the Louisiana Insurance Code was enacted in 1948. The codification placed the Direct Action Statute and Section 14.01 (later designated as La.R.S. 22:611) in the same section of the Insurance Code (Chapter 14). The placing of the Direct Action Statute in the same chapter as the provision providing for the "ocean marine" exclusion would seem to indicate a legislative intent to limit the scope of the Direct Action Statute. However, the Louisiana Supreme Court has held that the purpose of the 1948 codification was to "clarify and codify the laws as they then existed and as construed by the courtsnot to change them." Gay v. United Benefit Life Insurance Company, 233 La. 226, 96 So.2d 497, 498 (1957).
*1135 Furthermore, at the time of this accident La.R.S. 22:611 (now La.R.S. 22:3001) provided that "The applicable provision of this Part shall apply to insurances other than ocean marine and foreign trade insurances."[9] (Emphasis added) This language seems to indicate that the legislature intended for the exclusions to apply to only some of the sections of Part XIV. Had the legislature intended for the exclusionary language of La.R.S. 22:611 to apply to all of Part XIV, it would have left out the "applicable provisions" language and simply stated, "The provisions of this Part shall apply to insurances other than ocean marine and foreign trade insurances."
In Hae Woo Youn v. Maritime Overseas Corp., 605 So.2d 187, 208 (La.App. 5th Cir. 1992), the court held that "the general language at the beginning of section XIV (LSA-R.S. 22:611, supra) of the insurance code does not supersede the more specific language of the Direct Action Statute which allows a plaintiff to proceed directly against all liability policies, including ocean marine indemnity insurance policies." (Emphasis in original)
This court holds that the Direct Action Statute is not subject to the "ocean marine" exclusion of La.R.S. 22:611; therefore a tort victim has a right of direct action against a marine P & I insurer. The trial court did not err in denying United Kingdom's peremptory exception raising the objection of no right of action.
This assignment of error is without merit.

DECREE
For the foregoing reasons, the judgment of the trial court denying United Kingdom's peremptory exception raising the objection of no right of action is affirmed. United Kingdom is cast for all costs of this appeal.
AFFIRMED.
NOTES
[*] Judge Remy Chiasson, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[1] This action was brought under both the Jones Act (46 App.U.S.C. § 688) and general maritime law.
[2] Cosmian is a corporation domiciled in Panama and having its principal office and sole base of operations in Greece.
[3] La.R.S. 22:6(13)(e) defines marine protection and indemnity insurance as "insurance against, or against legal liability of the insured for, loss, damage, or expense incident to ownership, operation, chartering, maintenance, use, repair or construction of any vessel, craft or instrumentality in use in ocean or inland waterways, including liability of the insured for personal injury, illness or death or for loss of or damage to the property of another person."
[4] Phoenix is a New York corporation which sometimes acted as agent for Cosmian when its ship called at certain U.S. ports.
[5] United Kingdom filed two identical writ applications as a precautionary measure. These writs have been consolidated.
[6] The objection of no right of action asserted in a peremptory exception raises the question of whether a remedy afforded by law can be invoked by the plaintiff and determines if the plaintiff has a right or legal interest in the subject matter of the suit. Fulford v. Green, 474 So.2d 972 (La.App. 1st Cir.1985).
[7] The Louisiana Insurance Code, Title 22 of the Louisiana Revised Statutes of 1950, was amended and reenacted in its entirety by Acts 1991, No. 1031. This revision became effective on January 1, 1993, and is not applicable to this case.
[8] La.R.S. 22:1375 et seq. (now La.R.S. 22:5061 et seq.)
[9] Later versions of La.R.S. 22:611 used the words "applicable provisions" rather than "applicable provision" which appears to have been a typographical error.